
IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
March 24, 2017 Session

**LYNNE E. HARRISON v. EDWIN B. HARRISON, JR.**

**Appeal from the General Sessions Court for Loudon County**
**No. 13-DV-200     Rex A. Dale, Judge**

_____

**No. E2016-00672-COA-R3-CV**
_____

This divorce case involves a marriage of eight years' duration. Because the parties had reached an agreement with regard to the division of certain marital assets, the trial court was requested during a bench trial to divide the parties' retirement and pension accounts, or the marital portion thereof, and other limited marital assets and liabilities. The trial court considered the relevant statutory factors and apportioned the remaining assets and liabilities 60% to the wife and 40% to the husband. The trial court also awarded the husband $1,000.00 in attorney's fees and $180.42 in court reporter fees. The husband has appealed. Discerning no reversible error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the General Sessions Court Affirmed; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and CHARLES D. SUSANO, JR., J., joined.

Edwin B. Harrison, Jr., Lenoir City, Tennessee, Pro Se.

William Lee Gribble, II, Maryville, Tennessee, for the appellee, Lynne E. Harrison.

**OPINION**

I.  Factual and Procedural Background

This appeal results from a divorce action filed in the Loudon County General Sessions Court ("trial court"). On July 29, 2013, the plaintiff, Lynne E. Harrison ("Wife"), filed a complaint for divorce against the defendant, Edwin B. Harrison, Jr. ("Husband"). Both parties were sixty years of age at the time of trial. Prior to trial, the

parties entered into an agreed order, which stated that Wife would pay Husband $63,000.00 for his share of the parties' equity in the marital residence, with Husband quitclaiming any interest in the home to Wife. The parties further agreed that Husband would remove all of his personalty and his truck from the home. Husband was also allowed to retain his BMW automobile free from any claim by Wife while Wife was allowed to retain her Hyundai automobile free from any claim by Husband as part of the agreement.

The trial court conducted a bench trial on December 4 and 8, 2014, and June 22, 2015. The issues remaining for adjudication by the trial court were: (1) equitable distribution of the parties' retirement and pension accounts, or the marital portion thereof; (2) equitable allocation of a liability to the Internal Revenue Service; (3) Husband's claim for a portion of a homeowner's insurance premium refund received by Wife; (4) Wife's claim for a portion of prepaid car insurance premiums credited to Husband; (5) Wife's claim for reimbursement of expenses related to the marital residence for August 2013; (6) Wife's claim for reimbursement of medical and dental premiums and prescription costs she paid for Husband; and (7) Husband's claim for reimbursement of Discover credit card purchases. Following the trial, the court entered a "Final Order" on March 2, 2016.

In its Final Order, the trial court discussed and analyzed the statutory factors relative to an equitable distribution of marital property pursuant to Tennessee Code Annotated § 36-4-121. During this eight-year marriage, no children were born. The parties are of the same age. The court determined that both parties appeared to be in good physical and mental health, although Husband claimed to have a heart problem, for which he provided no medical proof. The court found that neither party would be restricted from employment for health reasons.

It is undisputed that Wife had worked for Oak Ridge National Laboratory ("ORNL") for thirty-three years until her retirement in 2012. Wife earned a gross salary at this employment of $50,000.00 to $60,000.00 per year, with a net salary of approximately $3,500.00 per month. The court noted that Wife's wages totaled approximately $360,471.00 during the marriage. Wife testified that the majority of her earnings were spent in payment of the parties' household expenses. Wife also reported that Husband assumed responsibility for all financial dealings during the parties' marriage.

The trial court found that Husband was "not employed, but claims he had two online collections businesses" at the time of the marriage. Husband indicated that although he had monetary judgments in his favor, they were largely uncollectible. The court further found that Husband also claimed his businesses owed him amounts through promissory notes, such that he received approximately $300,000.00 in repayment of those

obligations instead of a salary during the marriage, resulting in favorable tax consequences for the parties. The court noted, however, that Husband presented no documentation to support this claim. Although Husband also claimed to have received a lump-sum pension payment of $40,514.00 during the marriage, which he purportedly invested for the parties' benefit, he provided no documentation of what happened to these funds.

The trial court also found that Husband claimed to be in the business of recruiting as well as selling life insurance and annuities at the time of trial. The trial court took into account Husband's experience in financial and technological employment. Although Husband described his ownership of various trusts at the time of the marriage, he testified they had been largely depleted by the time of trial. Husband also claimed separate assets, consisting of a Honda Goldwing motorcycle valued at $13,500.00 and an interest in a condo in Destin, Florida, valued at $14,500.00.

Regarding future employment prospects, the trial court found that both parties possessed vocational abilities rendering them employable. According to the court, the parties' small estate would most likely be dissipated if the parties ceased working. The court noted that while Wife was capable of paying her monthly expenses from her current pension income, Husband claimed a monthly shortfall of $3,400.00.

The trial court determined Wife to be a credible witness while finding Husband's credibility to be "highly suspect." In support, the court specifically found that Husband presented "two false exhibits" in an effort to provide proof of monies that he purportedly contributed to the marital estate. As the court observed, Husband later admitted that the Quicken program he used to generate these documents was unreliable, and he was unable to provide supporting documentary evidence of his claims. The court further stated in its final judgment:

> The court finds that Husband continually made large unsubstantiated claims totaling multi-million dollar figures that benefitted the marriage. However the court finds that Husband's financial contributions to the marriage were more in the line of business and stock trade losses coupled with depreciation of assets and tax credit deductions on the 1040 Federal income tax returns that were filed jointly for the parties for the years 2006 through 2010. At the time of the hearing, Husband had not filed 1040 Federal income tax returns for 2011, 2012, and 2013, forcing wife to file separately for each of those years, resulting in very little, if any financial benefit to the marriage by the Husband.

The trial court found that Wife's "tangible contribution of a steady, continued income stream during the marriage was sufficient to meet monthly household expenses for the most part." The court further found that the parties lived "somewhat lavishly" for a time, taking multiple vacations that were paid for or deducted as an expense for tax purposes by Husband. As the court noted, Wife "admitted that Husband was able to pay what her income did not pay." Based on Wife's steady income throughout the marriage, however, the trial court determined that Wife's financial contribution to the marriage was "much more significant than that of the Husband."

Moreover, the trial court determined that each party maintained the ability to continue to accumulate future assets and income if he or she chose to do so. The court also found that the parties jointly decided to increase Wife's contributions to her 401(k) during the marriage; however, the growth of the marital estate was marginal due to Husband's reported stock losses of nearly $160,000.00.

Considering all of the factors enumerated in Tennessee Code Annotated § 36-4-121, the trial court concluded that the marital assets and liabilities should be divided 60% to Wife and 40% to Husband. In furtherance of this distribution, the court determined that Wife's Roth IRA, valued at $13,518.00, was Wife's separate property because it was funded with premarital contributions. To the extent that this asset increased in value during the marriage, the court determined that Husband did not substantially contribute to such increase, finding instead that any increase was attributable solely to market fluctuation.

Wife's traditional IRA, containing the funds rolled over from her 401(k) when she retired, was valued at $82,335.00 and divided 40% to Husband and 60% to Wife. The court specifically noted that "[t]he parties stipulated that $82,335.00 represents both the funds she invested and growth that occurred during the marriage as a marital asset subject to equitable division." The court also directed that a Qualified Domestic Relations Order ("QDRO") be prepared by the parties, dividing the marital portion of Wife's employer-provided pension 60% to her and 40% to Husband.

With respect to the liability owed to the Internal Revenue Service ("IRS"), the trial court found that Husband failed to file tax returns on behalf of the parties for the years 2011 through 2013 in a timely fashion. Having received notification of this failure, Wife filed her own separate returns for those tax years on May 14, 2014. Consequently, Wife incurred a tax liability for the respective years. The court noted that Husband "proffered no proof as to his income for 2011, 2012, and 2013, nor what the difference would be had they filed jointly for these years . . . ." The court therefore concluded that Husband's failure to timely file the tax returns resulted in Wife's being forced to file separately "to avoid penalties, interest, a threatened 'forced filing,' and other consequences from the

IRS." Because the tax liability represented by the filing of Wife's returns was determined to be a marital debt, the court ordered Husband to pay 40% of that liability, or $4,616.00. Husband was also ordered to pay 40% of the tax preparation fee, or $230.00.

Regarding the parties' claims for various reimbursements, the trial court denied Husband's claim seeking a portion of the refund of a homeowner's insurance premium received by Wife. The court also denied Wife's claim seeking a portion of a prepaid credit for an automobile insurance premium received by Husband. The court further denied Wife's claim for expenses related to the marital residence that she paid in August 2013. The court did, however, order Husband to reimburse Wife for the cost of medical and dental insurance premiums Wife paid on Husband's behalf through December 2015 in the amount of $5,661.00. The parties were ordered to calculate the amount of such reimbursement due to Wife for 2016, through thirty days from the date of entry of the Final Order, and submit it as an amendment to the order. Husband was further directed to reimburse Wife $90.00 for prescription charges he placed on Wife's credit card.

With reference to Husband's claim that Wife owed certain amounts for expenses she charged on a joint Discover credit card, Wife was ordered to reimburse Husband for her personal expenses plus one-half of the parties' joint expenses, for a total of $1,106.00. The court attached to its order a master asset list detailing the equitable division of the parties' assets and debts. Husband was awarded attorney's fees in the amount of $1,000.00, due to Wife's counsel's late appearance and/or failure to appear at depositions and hearings. The court also awarded Husband "associated court reporter fees for those delays," directing the parties to calculate those amounts and submit an amended order.

On March 22, 2016, the trial court entered an "Amendment to Final Order," in which the court directed that Wife be reimbursed the additional sum of $583.96 by Husband for his medical and dental insurance premiums paid by Wife in 2016. Finally, Wife was restored to her maiden name of Lynne Walker. Following the entry of this order, Husband filed a notice of appeal.

Upon receipt of the record by this Court, it was discovered that the question of the amount of court reporter fees owed to Husband had never been adjudicated by the trial court. This Court therefore entered an order on March 14, 2017, directing the parties to secure an order from the trial court resolving the issue of the amount of court reporter fees no later than noon on March 23, 2017. On March 21, 2017, the trial court entered an order setting the amount of court reporter fees at $180.42. The trial court clerk transmitted a supplemental record to this Court containing such order. Upon submission of a final judgment, this Court treated Husband's premature appeal as timely pursuant to Tennessee Rule of Appellate Procedure 4(d).

## II.  Issues Presented

Husband presents the following issues for our review, which we have restated slightly:

1. Whether the trial court erred by failing to state the effective date for calculation of Husband's portion of Wife's pension.

2. Whether the trial court erred in its classification of Wife's Roth IRA as separate property or, in the alternative, whether the trial court's valuation of Wife's traditional IRA was incorrect.

3. Whether the trial court erred by assessing to Husband a portion of the income tax liability incurred by Wife for the years 2011-2013.

4. Whether the trial court erred in its valuation of certain items of marital personalty.

5. Whether Husband is entitled to damages by reason of the failure of Wife's counsel to provide Husband with the required notice regarding COBRA insurance benefits.

6. Whether Husband is entitled to damages by reason of the failure of Wife's counsel to prepare and submit a QDRO.

7. Whether the trial court's award of attorney's fees to Husband was inadequate.

## III.  Standard of Review

In a case involving the proper classification and distribution of assets incident to a divorce, our Supreme Court has elucidated the applicable standard of appellate review as follows:

> This Court gives great weight to the decisions of the trial court in dividing marital assets and "we are disinclined to disturb the trial court's decision unless the distribution lacks proper evidentiary support or results in some error of law or misapplication of statutory requirements and procedures." *Herrera v. Herrera*, 944 S.W.2d 379, 389 (Tenn. Ct. App. 1996).  As such, when dealing with the trial court's findings of fact, we review the record de novo with a presumption of correctness, and we must honor those findings

unless there is evidence which preponderates to the contrary. Tenn. R. App. P. 13(d); *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993). Because trial courts are in a far better position than this Court to observe the demeanor of the witnesses, the weight, faith, and credit to be given witnesses' testimony lies in the first instance with the trial court. *Roberts v. Roberts*, 827 S.W.2d 788, 795 (Tenn. Ct. App. 1991). Consequently, where issues of credibility and weight of testimony are involved, this Court will accord considerable deference to the trial court's factual findings. *In re M.L.P.*, 228 S.W.3d 139, 143 (Tenn. Ct. App. 2007) (citing *Seals v. England/Corsair Upholstery Mfg. Co.*, 984 S.W.2d 912, 915 (Tenn. 1999)). The trial court's conclusions of law, however, are accorded no presumption of correctness. *Langschmidt v. Langschmidt*, 81 S.W.3d 741, 744-45 (Tenn. 2002).

*Keyt v. Keyt*, 244 S.W.3d 321, 327 (Tenn. 2007). Questions relating to the classification of assets as marital or separate are questions of fact. *Bilyeu v. Bilyeu*, 196 S.W.3d 131, 135 (Tenn. Ct. App. 2005).

Further, as this Court has previously held:

Because Tennessee is a "dual property" state, a trial court must identify all of the assets possessed by the divorcing parties as either separate property or marital property before equitably dividing the marital estate. Separate property is not subject to division. In contrast, Tenn. Code Ann. § 36-4-121(c) outlines the relevant factors that a court must consider when equitably dividing the marital property without regard to fault on the part of either party. An equitable division of marital property is not necessarily an equal division, and § 36-4-121(a)(1) only requires an *equitable* division.

*McHugh v. McHugh*, No. E2009-01391-COA-R3-CV, 2010 WL 1526140, at *3-4 (Tenn. Ct. App. Apr. 16, 2010) (internal citations omitted) (emphasis in original). *See also Manis v. Manis*, 49 S.W.3d 295, 306 (Tenn. Ct. App. 2001) (holding that appellate courts reviewing a distribution of marital property "ordinarily defer to the trial judge's decision unless it is inconsistent with the factors in Tenn. Code Ann. § 36-4-121(c) or is not supported by a preponderance of the evidence.").

Additionally, as this Court has explained with regard to *pro se* litigants:

Parties who decide to represent themselves are entitled to fair and equal treatment by the courts. The courts should take into account that many pro se litigants have no legal training and little familiarity with the

7

judicial system. However, the courts must also be mindful of the boundary between fairness to a pro se litigant and unfairness to the pro se litigant's adversary. Thus, the courts must not excuse pro se litigants from complying with the same substantive and procedural rules that represented parties are expected to observe.

The courts give pro se litigants who are untrained in the law a certain amount of leeway in drafting their pleadings and briefs. Accordingly, we measure the papers prepared by pro se litigants using standards that are less stringent than those applied to papers prepared by lawyers.

Pro se litigants should not be permitted to shift the burden of the litigation to the courts or to their adversaries. They are, however, entitled to at least the same liberality of construction of their pleadings that Tenn. R. Civ. P. 7, 8.05, and 8.06 provide to other litigants. Even though the courts cannot create claims or defenses for pro se litigants where none exist, they should give effect to the substance, rather than the form or terminology, of a pro se litigant's papers.

*Young v. Barrow,* 130 S.W.3d 59, 62-63 (Tenn. Ct. App. 2003) (internal citations omitted).

IV. Deficiencies in Husband's Brief

As a threshold matter, Wife points out that Husband has raised numerous issues regarding the valuation and distribution of marital assets in his appellate brief while failing to include a chart demonstrating the trial court's valuation and distribution of assets as required by Tennessee Rules of the Appellate Court 7. As this Court has explained concerning this rule:

As a preliminary matter, we note that Tennessee Rules of the Appellate Court Rule 7 requires that, in all cases where a party takes issue with the classification and division of marital property, the party must include in its brief a chart displaying the property values proposed by both parties, the value assigned by the trial court, and the party to whom the trial court awarded the property. Tenn. Ct. App. R. 7. Rule 7 also requires that "[e]ach entry in the table must include a citation to the record where each party's evidence regarding the classification or valuation of the property or debt can be found . . . ." In the recent case of *Harden v. Harden,* No. M2009-01302-COA-R3-CV, 2010 WL 2612688 (Tenn. Ct. App. June 30, 2010), this Court discussed the Rule 7 Table:

> This Court has previously held where an appellant fails to comply with this rule, that appellant waives all such issues relating to the rule's requirements. This Court is under no duty to search a trial court record in order to discern the valuation of the couple's property. This Court has previously found issues involving the valuation and division of property waived for failure to comply with Rule 7.

*Id.* at \*8 (citations omitted). In explaining the necessity of the Rule 7 Table, we further stated:

> [I]t is essential that the parties comply with Rule 7 in order to aid this Court in reviewing the trial court's decision. The table required by Rule 7, allows this Court to easily and correctly determine the valuation and distribution of the marital estate as ordered by the trial court. Further, the Rule 7 table, allows this Court to ascertain the contentions of each party as to the correct valuations and proper distribution, as well as the evidence in the record which the party believes supports its contention. Consequently, a table, in full compliance with Rule 7, is vital as this Court must consider the entire distribution of property in order to determine whether the trial court erred. Moreover, this Court is under no duty to minutely search the record for evidence that the trial court's valuations may be incorrect or that the distribution may be improper.

> *Id.*

*Forbess v. Forbess*, 370 S.W.3d 347, 354-55 (Tenn. Ct. App. 2011).

On March 24, 2017, Husband filed a motion with this Court seeking to supplement his appellate brief with, *inter alia*, a tabulation of property. Although Husband's table does not strictly comply with Tennessee Rules of the Appellate Court 7, as previously stated, this Court must be cognizant of both "fairness to a pro se litigant and unfairness to the pro se litigant's adversary." *Young*, 130 S.W.3d at 62. Determining that no unfairness would result from our acceptance of Husband's property table, we hereby grant his motion to supplement, finding his table to be in substantial compliance with Tennessee Rules of the Appellate Court 7. As such, we determine no waiver with regard to Husband's issues involving the valuation and division of property.

Wife further argues that Husband's brief fails to comply with the requirements of Tennessee Rule of Appellate Procedure 27. Rule 27 states in pertinent part:

(a)     Brief of the Appellant. The brief of the appellant shall contain under appropriate headings and in the order here indicated:

(4)     A statement of the issues presented for review;

* * *

(7)     An argument, which may be preceded by a summary of argument, setting forth:

(A)     the contentions of the appellant with respect to the issues presented, and the reasons therefor, including the reasons why the contentions require appellate relief, with citations to the authorities and appropriate references to the record (which may be quoted verbatim) relied on; and

(B)     for each issue, a concise statement of the applicable standard of review (which may appear in the discussion of the issue or under a separate heading placed before the discussion of the issues) . . . .

We recognize that Husband is a *pro se* litigant and respect his decision to proceed self-represented. Although Husband's brief fails to fully satisfy the requirements of Tennessee Rule of Appellate Procedure 27, we determine that this is an appropriate case in which to exercise our discretion to partially waive the briefing requirements in order to adjudicate the issues presented in Husband's principal brief. *See* Tenn. R. App. P. 2; *Chiozza v. Chiozza*, 315 S.W.3d 482, 487-489 (Tenn. Ct. App. 2009) ("[T]here are times when this Court, in the discretion afforded it under Tenn. R. App. P. 2, may waive the briefing requirements to adjudicate the issues on their merits.").

V. Division of Wife's Pension

Husband has presented an issue concerning whether the trial court erred by failing to state the effective date for calculation of the pension payments due to Husband from Wife's pension. In the argument section of his brief, however, Husband solely posits that he should have received an equal share of the marital portion of Wife's pension. During

10

oral argument, Husband clarified that he believed he was entitled to share in the pension benefits Wife received while the divorce action was pending.

The trial court ordered that the marital portion of Wife's pension be divided 60% to Wife and 40% to Husband, utilizing a formula set forth in correspondence to Wife from ORNL's office of pension operations. This correspondence, submitted as trial exhibit five, detailed that the marital portion of Wife's pension would be determined by "multiplying the Participant's current pension benefit by a fraction, the numerator of which is the Participant's participation in the Plan during the marriage (from 8/7/2005 through her retirement date of 6/1/2012), and the denominator of which is the Participant's total participation in the Plan as of her retirement date." The correspondence further explained that to calculate the marital portion of Wife's monthly pension benefit, such benefit would be multiplied by 6.75/32.8333, with 6.75 representing the time period from the date of the parties' marriage to the date of Wife's retirement and 32.8333 representing Wife's total years of employment. The resultant marital portion would then be reduced according to the trial court's equitable division, which in this case would result in 40% of the marital portion awarded to Husband.

In rendering its equitable division of marital property, the trial court specifically considered the pertinent statutory factors listed in Tennessee Code Annotated § 36-4-121 (Supp. 2016), which addresses the equitable division of marital property pursuant to divorce, providing in pertinent part:

(a)(1) In all actions for divorce or legal separation, the court having jurisdiction thereof may, upon request of either party, and prior to any determination as to whether it is appropriate to order the support and maintenance of one (1) party by the other, equitably divide, distribute or assign the marital property between the parties without regard to marital fault in proportions as the court deems just.

* * *

(c) In making equitable division of marital property, the court shall consider all relevant factors including:

(1) The duration of the marriage;

(2) The age, physical and mental health, vocational skills, employability, earning capacity, estate, financial liabilities and financial needs of each of the parties;

11

(3) The tangible or intangible contribution by one (1) party to the education, training or increased earning power of the other party;

(4) The relative ability of each party for future acquisitions of capital assets and income;

(5)(A) The contribution of each party to the acquisition, preservation, appreciation, depreciation or dissipation of the marital or separate property, including the contribution of a party to the marriage as homemaker, wage earner or parent, with the contribution of a party as homemaker or wage earner to be given the same weight if each party has fulfilled its role;

(B) For purposes of this subdivision (c)(5), dissipation of assets means wasteful expenditures which reduce the marital property available for equitable distributions and which are made for a purpose contrary to the marriage either before or after a complaint for divorce or legal separation has been filed.

(6) The value of the separate property of each party;

(7) The estate of each party at the time of the marriage;

(8) The economic circumstances of each party at the time the division of property is to become effective;

(9) The tax consequences to each party, costs associated with the reasonably foreseeable sale of the asset, and other reasonably foreseeable expenses associated with the asset;

(10) The amount of social security benefits available to each spouse; and

(11) Such other factors as are necessary to consider the equities between the parties.

In the case at bar, the trial court noted that this was a marriage of approximately eight years' duration. The court also found that the parties were both sixty years of age and in good physical and mental health. Both parties were skilled and employable, which would render them both capable of acquiring or accumulating assets and income in the future. Husband received as his separate property a motorcycle valued at $13,500.00 and an interest in a condo in Destin valued at $14,500.00. Each party had a modest amount of separate retirement savings.

The trial court's analysis of the statutory factors found in Tennessee Code Annotated § 36-4-121 focused primarily on factor number five, concerning the "contribution of each party to the acquisition, preservation, appreciation, depreciation or dissipation of the marital or separate property." The court made extensive findings regarding this factor, detailing the parties' contributions of employment income and other assets. The court found that Wife worked for ORNL for approximately thirty-three years before her retirement in 2012, earning an annual gross salary of $50,000.00 to $60,000.00. According to the court, Wife's wages from 2006 through 2012 totaled $360,471.00.

With reference to Husband's contributions, the trial court stated that Husband "claimed his corporation owed him some $300,000.00 which he used to pay down promissory notes owed to him instead of receiving a salary" but "provided no documentation to support his claim." Additionally, Husband received a lump sum of $40,514.00 from his pension and retirement plan in 2012, which he claimed to have used for investments to benefit the parties. The court found that Husband was unable to provide documentation demonstrating where this money was deposited or for what purpose it was used.

Husband provided documentation of two trust accounts that existed at the time of the marriage, one with a balance of $45,598.00 at the time of the marriage and the other with a balance of $955.00 in 2008. The court made an overarching finding that Husband's credibility was "highly suspect," explaining that Husband presented documents to the court in an effort to claim contributions in excess of $1,000,000.00 to the marital estate. Husband later admitted that these documents were untrustworthy because the "Quicken internal program he used to create them was unreliable." The court determined that Husband's financial contributions to the marriage were "more in the line of business and stock trade losses coupled with depreciation of assets and tax credit deductions on the 1040 Federal income tax returns."[1] The court accordingly concluded that Wife's financial contribution to the marital estate was more significant than Husband's contribution.

Based on its findings with regard to the pertinent statutory factors, the trial court determined that an equitable distribution of the marital estate would be effected through

---

[1] The trial court made a specific finding that Husband reported stock losses of $160,000.00 on the parties' federal income tax returns. Husband contends that this particular finding is unsupported by the record. Although we agree with Husband that the parties' tax returns do not demonstrate stock losses of this magnitude, we do not find this single fact significant or determinative with regard to the trial court's overall analysis.

an allocation of 60% of the marital property to Wife and 40% to Husband. We agree. As this Court has explained with regard to an equitable marital property distribution:

> The approach to dividing a marital estate should not be mechanical, but rather should entail carefully weighing the relevant factors in Tenn. Code Ann. § 36-4-121(c) in light of the evidence that the parties have presented. *Flannary v. Flannary,* 121 S.W.3d [647,] 650-51 [(Tenn. 2003)]; *Tate v. Tate,* 138 S.W.3d 872, 875 (Tenn. Ct. App. 2003); *Kinard v. Kinard,* 986 S.W.2d [220,] 230 [(Tenn. Ct. App. 1998)]. Trial courts have broad discretion in fashioning an equitable division of marital property, *Jolly v. Jolly,* 130 S.W.3d 783, 785 (Tenn. 2004); *Fisher v. Fisher,* 648 S.W.2d 244, 246 (Tenn. 1983), and appellate courts must accord great weight to a trial court's division of marital property. *Wilson v. Moore,* 929 S.W.2d 367, 372 (Tenn. Ct. App. 1996); *Batson v. Batson,* 769 S.W.2d 849, 859 [(Tenn. Ct. App. 1988)]. Accordingly, it is not our role to tweak the manner in which a trial court has divided the marital property. *Morton v. Morton,* 182 S.W.3d [821,] 834 [(Tenn. Ct. App. 2005)]. Rather, our role is to determine whether the trial court applied the correct legal standards, whether the manner in which the trial court weighed the factors in Tenn. Code Ann. § 36-4-121(c) is consistent with logic and reason, and whether the trial court's division of the marital property is equitable. *Jolly v. Jolly,* 130 S.W.3d [783,] 785-86 [(Tenn. 2004)]; *Gratton v. Gratton,* No. M2004-01964-COA-R3-CV, 2006 WL 794883, at *7 (Tenn. Ct. App. Mar. 28, 2006) (No Tenn. R. App. P. 11 application filed); *Kinard v. Kinard,* 986 S.W.2d at 231.

*Owens v. Owens*, 241 S.W.3d 478, 490 (Tenn. Ct. App. 2007), *perm. app. denied* (Tenn. Sept. 17, 2007). The evidence in this matter preponderates in favor of the trial court's determination with regard to its equitable distribution of marital assets.

Specifically with regard to Wife's pension, we find Husband's contention that he should receive 50% rather than 40% of the marital portion of this asset to be unavailing. As previously explained, this Court must "accord great weight to a trial court's division of marital property" and should refrain from "tweak[ing] the manner in which a trial court has divided the marital property." *See Owens*, 241 S.W.3d at 490.

Husband also posits that he should have been awarded a share of the pension payments Wife received during the pendency of the divorce proceedings. We note that Tennessee Code Annotated § 36-4-121 defines marital property as "all real and personal property, both tangible and intangible, acquired by either or both spouses during the course of the marriage up to the date of the final divorce hearing," further providing that

14

such property "shall be valued as of a date as near as possible to the date of entry of the order finally dividing the marital property." Accordingly, Wife's pension benefits paid during the pendency of the divorce proceedings were included in the total marital estate, having been used either to contribute to or preserve marital assets or to extinguish marital liabilities. In other words, Wife's monthly pension benefits, which she has treated as income and utilized for living expenses, have already been accounted for as part of the overall distribution of marital property. *See, e.g., Wilson v. Moore*, 929 S.W.2d 367, 374 (Tenn. Ct. App. 1996) (determining that the husband's income earned during the marriage was marital property). We likewise find Husband's contention regarding pension payments unavailing.

## VI. Classification of Wife's Roth IRA

Husband also asserts that the trial court's classification of Wife's Roth IRA as her separate property was improper. Husband contends that Wife's Roth IRA was established and funded during the marriage, such that it should have been considered marital property. By contrast, Wife testified that her Roth IRA was funded entirely with premarital monies. The trial court credited Wife's testimony, determining that the "origin of the money used to create [the] Roth IRA was from [Wife's] separate pre-marital earnings . . . ." The court further found that any increases in the value of Wife's Roth IRA were attributable solely to market factors rather than any contributions to its preservation or appreciation by Husband. *See Smith v. Smith*, 93 S.W.3d 871, 878 (Tenn. Ct. App. 2002).[2]

Inasmuch as neither party presented documentary evidence regarding the origin of the money in Wife's Roth IRA, determination of this issue hinges solely on witness credibility. As our Supreme Court has explained:

> [A]ppellate courts should afford trial courts considerable deference when reviewing issues that hinge on the witnesses' credibility because trial courts are "uniquely positioned to observe the demeanor and conduct of witnesses." *State v. Binette,* 33 S.W.3d 215, 217 (Tenn. 2000). "[A]ppellate courts will not re-evaluate a trial judge's assessment of witness credibility absent clear and convincing evidence to the contrary." *Wells v. Tennessee Bd. Of Regents,* 9 S.W.3d 779, 783 (Tenn. 1999); *see*

---

[2] Although not applicable to the instant action, we note that the current version of Tennessee Code Annotated § 36-4-121(b)(1)(b)(iii), effective July 1, 2015, provides that any "account balance, accrued benefit, or other value of vested and unvested pension benefits, vested and unvested stock option rights, retirement, and other fringe benefits accrued as a result of employment prior to the marriage, together with the appreciation of the value, shall be 'separate property.'"

*also Hughes v. Metro. Gov't of Nashville & Davidson Cnty.,* 340 S.W.3d 352, 360 (Tenn. 2011).

*Kelly v. Kelly*, 445 S.W.3d 685, 692 (Tenn. 2014). We therefore conclude that the trial court's decision to credit Wife's testimony regarding the origin of the funds in her Roth IRA is entitled to such deference. We affirm the trial court's classification of this asset as Wife's separate property.

Husband also posits that even if Wife's Roth IRA is determined to be her separate property, its value nonetheless should have been subtracted from the pre-marital value of Wife's 401(k) in order to properly determine the value of the marital portion of Wife's traditional IRA. Wife claimed that the pre-marital value of her 401(k) included the funds later placed in the Roth IRA as well as the funds placed into Wife's traditional IRA. With regard to the marital portion of Wife's traditional IRA, however, the trial court stated: "The parties stipulated that $82,335.00 represents both the funds she invested and growth that occurred during the marriage as a marital asset subject to equitable division." We presume that this stipulation was contained within a "Master Asset List" referenced by the trial court in its order. Although the trial court did attach a "Master Asset List" to its order, demonstrating its valuation and distribution of the parties' assets and liabilities, the order separately referenced a "Master Asset List" submitted by the parties, which is not in the record.

Our Supreme Court has previously explained that a stipulation of fact by the parties must be given effect by the court "if the factual stipulation is not patently untrue in view of other evidence in the record." *See Mast Advert. & Pub., Inc. v. Moyers*, 865 S.W.2d 900, 902 (Tenn. 1993). Furthermore, if a stipulation is not preserved in the appellate record, a "conclusive presumption rises . . . that the stipulated facts were sufficient to warrant [the trial court's] action." *See Hall v. Hall*, 241 S.W.2d 919, 921 (Tenn. 1951); *see also McClendon v. McClendon*, No. C.A. 760, 1987 WL 10677, at *2 (Tenn. Ct. App. May 13, 1987) (explaining that when the appellate record is incomplete, this Court must presume that the evidence introduced supported the determination of the trial court); *Reid v. Reid*, 388 S.W.3d 292, 295 (Tenn. Ct. App. 2012) (stating that it is the parties' duty to ensure that the record on appeal contains a "fair, accurate, and complete account of what transpired" with regard to the issues presented on appeal). In this matter, the trial court relied upon a stipulation by the parties with regard to the value of the marital portion of Wife's traditional IRA; therefore, we presume that a valid stipulation existed in the absence of evidence to the contrary. As such, we determine that Husband's contention that such valuation was incorrect is unavailing.

## VII. Federal Income Tax Liability

Husband contends that the trial court erred by determining that Wife's federal income tax liability incurred for tax years 2011-2013 was a marital liability. Husband argues that this liability was solely the result of Wife's refusal to sign a joint tax return, based on her decision to file separately regarding her income taxes. The trial court found that Husband failed to timely file the parties' returns for tax years 2011-2013, forcing Wife to file separately to "avoid penalties, interest, a threatened 'forced filing,' and other consequences from the IRS." The court therefore determined this tax obligation to be a marital debt. Upon our thorough review of the evidence, we agree.

It is undisputed that the federal income tax liability at issue was incurred by Wife during the marriage. As such, there is no question that this obligation constituted a marital debt. *See Alford v. Alford*, 120 S.W.3d 810, 813 (Tenn. 2003) ("'[M]arital debts' are all debts incurred by either or both spouses during the course of the marriage up to the date of the final divorce hearing."). Factors the trial court should consider when equitably dividing marital debt include: (1) the debt's purpose, (2) which party incurred the debt, (3) which party benefitted from incurring the debt, and (4) which party is best able to repay the debt. *Id*. at 814.

Wife testified that Husband had voluntarily undertaken the responsibility for filing the parties' income tax returns during the marriage. Wife explained that after the parties' separation, she learned through correspondence from the IRS that Husband had filed the parties' 2010 income tax return three years late and had failed to file income tax returns for tax years 2011-2013. Husband did not dispute Wife's testimony in this regard. Wife stated that she hired a tax preparer to prepare and file income tax returns on her behalf for those years, which were filed as "married filing separately." In so doing, Wife incurred income tax liability plus tax preparation fees.

According to Wife, when she initially learned about the delinquent income tax returns, she pleaded with Husband to file them, to no avail. Wife related that Husband refused to prepare or file the income tax returns, stating that he did not have time. Wife also testified that she did not trust Husband to file the returns after she learned that he had not been truthful with her about other matters. Therefore, Wife retained a third-party professional to prepare the returns on her behalf. Husband testified that although he offered numerous times during the pendency of the divorce to prepare and file the delinquent income tax returns, Wife would not cooperate or communicate with him. Husband also claimed that he offered to file amended returns after Wife had separately filed in order to avoid the tax liability. Husband admitted, however, that he never prepared any amended returns for Wife's signature, stating that he did not have the necessary information. Husband related that he also separately filed income tax returns

for 2011 and 2012, but as of the December 8, 2014 trial date, Husband had not yet filed his 2013 income tax return because there was "no rush."

Based on the proof presented, it is clear that this federal tax liability was incurred to prevent the parties from being assessed penalties by the IRS for failing to file certain income tax returns. Although the tax liability was technically incurred by Wife, both parties received an associated benefit and were similarly situated to repay this debt; therefore, the evidence does not preponderate against the trial court's decision to allocate the debt 60% to Wife and 40% to Husband.

Husband's argument with regard to this liability also implies that Wife dissipated the marital estate by filing separate income tax returns. In a similar case, however, this Court determined that a spouse's decision to file her income tax returns separately during the marriage did not constitute dissipation of the marital estate when the spouse had good reason for her action. *See Echols v. Echols,* No. E1999-00619-COA-R3-CV, 2000 WL 688589 (Tenn. Ct. App. May 30, 2000). In *Echols*, the wife explained that she filed separately due to legitimate concerns that her husband was under-reporting his income. *Id.* at 6. This Court determined that the wife had a reasonable basis for her fear due to certain of the husband's business practices and that her action therefore did not amount to dissipation of the marital assets. *Id.*

In the instant action, Husband never disputed that he had failed to timely file the parties' joint income tax returns for tax years 2011-2013. Husband's testimony demonstrated that he did not become concerned with filing these returns until after the divorce proceedings were commenced. Although Husband claimed that Wife was equally at fault for this failure due to her lack of cooperation, the trial court found Husband's credibility to be "highly suspect" and credited Wife's testimony on this issue. We emphasize that "where issues of credibility and weight of testimony are involved, this Court will accord considerable deference to the trial court's factual findings." *See Keyt*, 244 S.W.3d at 327. Based on the evidence presented and the trial court's assessment of credibility, we determine that Wife maintained a reasonable concern regarding Husband's failure to timely file the parties' federal income tax returns. Her decision to file separately did not constitute dissipation of marital assets. We accordingly conclude Husband's issue regarding the allocation of this marital debt to be without merit.

## VIII. Valuation of Other Property

Husband's next issue addresses the value placed on certain items of personalty by the trial court. Husband contends that the trial court adopted values for various items

from worksheets submitted by Wife.[3]  According to Husband, the trial court "chose" not to hear testimony regarding these items.

Our review of the transcript does not bear out Husband's contention.  The parties were afforded three days of trial within which to present evidence.  The trial court did not refuse to hear any testimony regarding the value of assets.  In fact, upon the conclusion of trial, discussion ensued among the court, counsel, and parties regarding items of personalty that were identified on asset lists provided by the parties.[4]  The trial court pointed out that there had been no testimony presented regarding valuation.  After fruitless discussion regarding whether either party was willing to take steps necessary to sell the items, the court stated, "I'll just divide them up."  Neither counsel objected to this resolution.  Furthermore, neither counsel sought to present additional testimony regarding respective values.  We therefore determine that any issue with regard to the trial court's valuation of certain of the parties' personalty has been waived.  *See Waters v. Farr,* 291 S.W.3d 873, 918 (Tenn. 2009) (stating that issues not raised in the trial court are waived on appeal).

## IX.  COBRA Insurance Notification

Husband asserts that he is entitled to damages by reason of the failure of Wife's counsel to provide him with the appropriate notification regarding COBRA insurance.  Husband first raised this issue following entry of the March 2, 2016 Final Order by filing an "Emergency Motion for Enforcement of Stay," wherein Husband asserted that he had not received notice regarding COBRA insurance conversion for his medical and dental insurance.  According to the record before this Court, however, Husband subsequently filed a withdrawal of the motion, stating that he had received a notice of health insurability as of September 13, 2016, which rendered his motion "moot."  Therefore, this Court cannot fully analyze this issue despite its having been raised at the trial court level, because the trial court never considered nor ruled upon it.  *See Dorrier v. Dark,* 537 S.W.2d 888, 890 (Tenn. 1976) ("This is a court of appeals and errors, and we are limited in authority to the adjudication of issues that are presented and decided in the trial courts . . . ."); *see also Heatherly v. Merrimack Mut. Fire Ins. Co.,* 43 S.W.3d 911, 916 (Tenn. Ct. App. 2000) ("As a general matter, appellate courts will decline to consider issues . . . that were not raised and considered in the trial court."); *Hayes v. Gentry,* 03A01-9303-CH-00120, 1993 WL 191999, at *2 (Tenn. Ct. App. June 8, 1993) ("[S]ince this issue was not adjudicated in the trial court, we cannot consider it on appeal.").  This issue, not having been adjudicated by the trial court, may not be considered on appeal.

---

[3] Presumably, Husband is referring to the numerous items of furniture and other household goods listed on his late-filed property tabulation.

[4] These asset lists do not appear in the appellate record.

19

## X.  Failure to Prepare and Submit QDRO

Husband's next issue also concerns enforcement of the trial court's judgment. Husband complains that Wife's counsel has never submitted the required QDRO to the trial court to effectuate the distribution of Wife's pension.  Again, because this issue was not raised before or considered by the trial court, we cannot consider it on appeal.  *See Dorrier*, 537 S.W.2d at 890; *Heatherly*, 43 S.W.3d at 916; *Hayes*, 1993 WL 191999, at *2.

## XI.  Attorney's Fees

Finally, Husband argues that the trial court erred by failing to award him a greater amount of attorney's fees and costs due to Wife's "deliberate stalling actions, frivolous motions, non-appearance for the trial," and other allegedly litigious tactics.  At trial, Husband presented this claim to the trial court and testified regarding the allegedly dilatory actions by Wife and her counsel.  In the March 2, 2016 Final Order, the trial court made the following award:

> Husband is awarded his attorney fees as a result of Wife's attorney showing up 40 minutes late for trial, 50 minutes late for depositions of the parties, and for failure of Wife and her attorney to appear for a scheduled trial date, for a total of four (4) hours at the rate of $250 per hour plus associated court reporter fees for those delays.

In its subsequent March 21, 2017 order, the trial court affirmed the attorney's fee award to Husband in the amount of $1,000.00, while additionally awarding court reporter fees of $180.42.

> As this Court has previously explained with regard to an award of attorney's fees:

> Our review of an award of attorney's fees is guided by the principle that "'the allowance of attorney's fees is largely in the discretion of the trial court, and the appellate court will not interfere except upon a clear showing of abuse of that discretion.'"  *Mimms v. Mimms,* 234 S.W.3d 634, 641 (Tenn. Ct. App. 2007) (quoting *Taylor v. Fezell,* 158 S.W.3d 352, 359 (Tenn. 2005)).  "Reversal of the trial court's decision [regarding] attorney fees at the trial level should occur 'only when the trial court applies an incorrect legal standard, reaches a decision that is illogical, bases its decision on a clearly erroneous assessment of the evidence, or employs reasoning that causes an injustice to the complaining party.'"  *Church v. Church,* 346 S.W.3d 474, 487 (Tenn. Ct. App. 2010).

*Hernandez v. Hernandez*, No. E2012-02056-COA-R3-CV, 2013 WL 5436752, at *8 (Tenn. Ct. App. Sept. 27, 2013). We determine no such abuse of discretion in this matter. Therefore, we affirm the trial court's award of attorney's fees and court reporter expenses.

## XII. Conclusion

For the foregoing reasons, we affirm the trial court's judgment in all respects. Costs on appeal are taxed to the appellant, Edwin B. Harrison, Jr. This case is remanded to the trial court for enforcement of the judgment and collection of costs assessed below.

_____
THOMAS R. FRIERSON, II, JUDGE